IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLEMENT A. DORTIE | : | |
| v. | : | Civil Action No. DKC 25-2970 |
| MARRIOTT INTERNATIONAL, INC. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are the motion for preservation order and anti-spoliation relief, (ECF No. 34), motion for corporate governance relief, (ECF No. 39), motion for order directing Marriott's audit committee to commission independent investigation, (ECF No. 40), motion for Rule 37 sanctions for failure to provide spoliation certification, (ECF No. 52), and the motion to dismiss filed by Defendant Marriott International, Inc. for lack of Article III standing and failure to state a claim, or, in the alternative, for *forum non conveniens*, (ECF No. 60). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted on *forum non conveniens* grounds, and the remaining motions will be denied as either moot or meritless.

## I. Background

Plaintiff Clement A. Dortie is a United Kingdom citizen residing in London, England, and a Marriott Bonvoy member. (ECF No. 1, at 1; *id.* ¶ 5). He and his colleague had a lunch reservation on May 14, 2025, at the Stock Exchange Hotel (a Marriott-branded franchisee) in Manchester, England. (*Id.* ¶ 7). When Plaintiff's colleague attempted to pre-pay for the reservation, an unidentified individual at the hotel said: "You people have already been told you can't eat here." (*Id.* ¶ 7). Although Plaintiff does not identify his own race in the complaint, he alleges that the individual's statement constituted a racially discriminatory denial of service. (*Id.* ¶ 8). Plaintiff then sent "over 535 communications" to Marriott regarding this matter, "none of which Marriott acknowledged." (*Id.* ¶ 10). This incident and Marriott's "deliberate policy of silence" allegedly caused Plaintiff humiliation and emotional distress. (*Id.* ¶¶ 9, 13).

Plaintiff filed a complaint *pro se* on September 9, 2025, asserting the following claims: racial discrimination under 42 U.S.C. § 1981 (Count I), unlawful denial of public accommodations under 42 U.S.C. § 2000(a) (Count II), breach of contract under Maryland state law (Count III), and intentional infliction of emotional distress ("IIED") (Count IV). (*Id.* ¶¶ 14–17).

Service was eventually effected and, on June 5, 2026, Defendant filed a motion to dismiss for lack of subject matter jurisdiction (Article III standing), failure to state a claim, and *forum non conveniens*. (ECF No. 60). On that same date, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (ECF No. 64). Defendant filed a reply on June 12, 2026. (ECF No. 75).

Plaintiff submitted dozens of other filings, leading the court to grant Defendant's request that Plaintiff be required to obtain leave before submitting additional filings. (ECF No. 78). Several of Plaintiff's filings prior to that order were styled as motions: motion for preservation order and anti-spoliation relief, (ECF No. 34); motion for corporate governance relief, (ECF No. 39); motion for order directing Marriott's audit committee to commission independent investigation, (ECF No. 40); and motion for Rule 37 sanctions for failure to provide spoliation certification, (ECF No. 52). Defendant did not respond to these motions.

After reviewing the papers, including Plaintiff's opposition to the motion to dismiss in which he stated that his Marriott Bonvoy membership agreement included a "Maryland jurisdiction clause" and was "governed by Maryland law," (ECF No. 64, at 2), the court issued a Letter Order on July 15 requesting that the parties do the following:

1) Inform the court whether the Marriott Bonvoy membership agreement contains a forum selection clause and file said agreement with the court;

2) If the agreement does contain a forum selection clause, discuss its enforceability and scope considering the claims Plaintiff asserts;

3) Inform the court whether the agreement contains a choice-of-law clause and, if it does, how it affects Plaintiff's claims and the *forum non conveniens* analysis; and

4) Discuss whether Defendant is amenable to process in England and in which court(s), such that the English forum is "available" for the purpose of *forum non conveniens*. *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011); *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co.*, 686 F.Supp.2d 558, 562 (D.Md. 2010).

(ECF No. 79, at 1–2). Plaintiff then filed four responses to the Letter Order, (ECF Nos. 80; 81; 82; 83), Defendant filed a response, (ECF No. 85), and Plaintiff filed two replies, (ECF Nos. 86; 87). Those responses revealed the following forum selection clause in the Marriott Bonvoy Loyalty Program Terms & Conditions: "The exclusive jurisdiction for any claim or action arising out of or relating to the Loyalty Program or the Program Rules may be filed only in the state or federal courts located in the State of Maryland, United States."

Nevertheless, Plaintiff's complaint does not belong in this court and will be dismissed under the doctrine of *forum non*

*conveniens*. Ordinarily, courts may proceed directly to the *forum non conveniens* analysis without considering any other issues, including subject matter jurisdiction. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

Here, however, the court must interpret the forum selection clause as part of the *forum non conveniens* analysis. *See BAE Sys. Tech. Sol.& Serv., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018) (considering a forum selection clause "in the context of a *forum non conveniens analysis*"). Because such interpretation is "intertwined with the merits" of Plaintiff's case, the court must first "assure[] itself of jurisdiction." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 207–08 (4th Cir. 2022) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)).

Accordingly, Defendant's objection to Plaintiff's Article III standing will be considered first, followed by Defendant's argument that the case should be dismissed for *forum non conveniens*.

## II. Article III Standing

Article III standing is a threshold jurisdictional requirement for which the plaintiff must establish three elements: "injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111 (2025). The injury in fact element "requires the plaintiff to demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" *Id.* (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)).

Defendant argues that Plaintiff has failed to allege an injury in fact because it was Plaintiff's colleague, rather than Plaintiff himself, who was told they could not eat at the restaurant. (ECF No. 60-1, at 9–10). In other words, Defendant contends that Plaintiff is improperly asserting the injury of a third party rather than his own. (*Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). But Plaintiff states that he suffered "professional and reputational harm" because the denial of service caused "damage to his relationship[] with The King's Trust," members of which were presumably going to attend the lunch. (ECF No. 64, at 2). Construing Plaintiff's papers liberally, the loss of the lunch reservation constituted a lost business opportunity. "[L]ost business opportunities satisfy [the injury-in-fact] requirement." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 211 (4th Cir. 2020)

(citing *Craig v. Boren*, 429 U.S. 190, 194 (1976)). Defendant's Article III standing challenge fails.

**III. *Forum Non Conveniens***

Under the principle of *forum non conveniens*, "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). This principle applies where an adequate alternative forum exists, "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The defendant "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," but when the plaintiff brings suit outside his home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is . . . 'less reasonable.'" *Sinochem*, 549 U.S. at 430 (quoting *Piper Aircraft Co.*, 454 U.S. at 255-56). Several circuit courts of appeal have held that when evaluating a motion to dismiss under *forum non conveniens*, a court may consider "other evidence that the parties submit," at least so long as the extrinsic evidence does not conflict with allegations made in the complaint. *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 400 (6th

Cir. 2025) (compiling holdings by the Second, Ninth, Tenth, and Eleventh Circuits).

To succeed on a motion to dismiss for *forum non conveniens*, the defendant must first establish that "there exists an alternative forum" available to all parties and that an adequate remedy is available to the plaintiff. *Piper Aircraft Co.*, 454 U.S. at 254 n.22. If an adequate alternative forum exists, the defendant must then establish that private and public interests support dismissal, specifically analyzing the factors identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). In this analysis, the court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical" to the plaintiff's cause of action and the defendant's potential defenses. *Van Cauwenberghe v. Baird*, 486 U.S. 517, 528 (1988). Courts must "retain flexibility" in balancing the private and public interests at stake, as "'[e]ach case turns on its facts.'" *Piper Aircraft Co.*, 454 U.S. at 249 (quoting *Williams v. Green Bay & W. R. Co.*, 326 U.S. 549, 557 (1946)). A district court can dismiss a case on *forum non conveniens* grounds based on its sound discretion. *See id.* at 257; *Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 314 (4th Cir. 1984).

**A. Forum Selection Clause**

The typical *forum non conveniens* framework, described above, is modified "in the context of a valid forum selection clause." *BAE Sys.*, 884 F.3d at 471. This is because "[a] valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013)(citation modified). This rule only applies, however, when "the claims fall within the scope of the [forum selection] clause." *Torres v. SOH Distrib. Co.*, No. 10-cv-179-JRS, 2010 WL 1959248, at *2 (E.D.Va. May 13, 2010); *see also Turner v. Costa Crociere S.P.A.*, 488 F.Supp.3d 1240, 1246 (S.D.Fla. 2020).

Plaintiff argues that the forum selection clause in the Marriott Bonvoy Loyalty Program Terms & Conditions requires adjudication in this jurisdiction. (ECF Nos. 80, at 1–3). Defendant argues that this case falls outside the scope of the forum selection clause. (ECF No. 85, at 2–5). Accordingly, the validity and enforceability of the forum selection clause are not at issue, only the scope is disputed.

As to the question of scope, a court should "look[] to the language of the parties' contract[] to determine which causes of action are governed by the forum selection clause[]." *Brooks-Williams v. Keybank, Nat'l Ass'n*, No. 15-cv-559-WDQ, 2015 WL

9255327, at *5 (D.Md. Dec. 17, 2015) (quoting *NC Contracting, Inc. v. Munlake Contractors, Inc.*, No. 11-cv-766, 2012 WL 5303295, at *6 (E.D.N.C. Oct. 25, 2012)); *see also Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).

The parties' forum selection clause provides as follows: "The exclusive jurisdiction for any claim or action arising out of or relating to the Loyalty Program or the Program Rules may be filed only in the state or federal courts located in the State of Maryland, United States." (ECF No. 85-2 ¶ 9.14). The question, then, is whether Plaintiff's claims arise out of or relate to the Loyalty Program or the Program Rules. They do not.

The forum selection clause does not cover *every* dispute between a Marriott Bonvoy member and Defendant, *cf. Brooks-Williams*, 2015 WL 9255327, at *5 (noting that the forum selection clause there applied to "any suit" between the parties); instead, it is limited to those disputes arising out of or relating to the Loyalty Program or the Program Rules.[1] The term "relating to" is generally considered to be broader than "arising from." *See, e.g.*, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d

[1] The Loyalty Program Terms & Conditions state that "[t]he Loyalty Program operates under the terms and conditions as set out below unless otherwise expressly stated (the 'Program Rules')." (ECF No. 85-2, at 2). The parties have not pointed to any relevant instance in which the Loyalty Program does not operate under such terms and conditions. Nor have they provided any other documents other than the Program Rules.

Cir. 2001). Moreover, "[t]he term 'relating to' is akin to the phrases 'in connection with,' 'associated with,' 'with respect to,' and 'with reference to.'" *Whitaker*, 42 F.4th at 210 (quoting *Coregis Ins. Co.*, 241 F.3d at 129 (2d Cir. 2001)). In any event, there must necessarily be an identifiable *relationship* between the claim and the Loyalty Program or the Program Rules. Plaintiff's Marriott Bonvoy status alone is insufficient to supply the requisite relationship.

Plaintiff contends that his claims are within the scope of the forum selection clause because his claims involve "the exercise of Bonvoy membership benefits, the cancellation of a reservation made under a Bonvoy membership, and the treatment of a Bonvoy member in connection with a Bonvoy-participating property." (ECF No. 80, at 3). The record does not support those contentions. All of Plaintiff's claims stem from the same reservation cancellation and denial of service. As to Plaintiff's first two points, he has not explained how the reservation constituted an exercise of a Loyalty Program benefit. Although the restaurant appeared in the Bonvoy app, Defendant represents that "[n]either the [Marriott] App nor the [Marriott] Website permits a user to book a table at the Hotel's restaurant directly through any Marriott or Bonvoy interface." (ECF No. 85-1 ¶ 7). Instead, the App and Website direct the user to third-party reservation

platforms OpenTable and EasyTable, or to call the restaurant directly. (ECF No. 85-5). Plaintiff indicates he made the reservation via phone call. (ECF No. 86, at 3).

Defendants further represent that Plaintiff "did not hold a guest-room reservation at the Hotel booked through his Bonvoy account," and "no restaurant or dining reservation at the Hotel is associated with Plaintiff's Bonvoy account." (ECF No. 85-1 ¶ 10; *see also* ECF No. 85-6). Nor is there any indication that this particular reservation was an "extraordinary experience[]" to which Plaintiff's Bonvoy membership gave him "access." (ECF No. 86, at 3). In short, the restaurant reservation had nothing to do with the Loyalty Program or Program Rules.

For the same reasons, Plaintiff's third point, that the reservation cancellation involved "the treatment of a Bonvoy member in connection with a Bonvoy-participating property," fails to explain how his claims relate to the Loyalty Program and Program Rules.

Therefore, Plaintiff's claims do not relate to the Loyalty Program and Program Rules and thus fall outside the scope of the forum selection clause.[2] Thus, the forum selection clause does not affect the *forum non conveniens* analysis.

---

[2] Plaintiff alleges that his breach of contract claim is for an unidentified breach of the Program Rules, rather than any separate contract he may believe was formed by virtue of the

### B. Availability and Adequacy of the Alternative Forum

Defendant points to England, specifically the Manchester County Court, as the available and adequate alternative forum. (ECF No. 85, at 6–7). "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010) (alterations in original) (quoting *Piper Aircraft Co.*, 454 U.S. at 254 n.22). The United States Court of Appeals for the Fourth Circuit has also indicated that the party moving to dismiss on *forum non conveniens* grounds should identify the court within the foreign jurisdiction that serves as an available and adequate alternative forum. *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984). Defendant "consents to service of process and to the jurisdiction of the courts of England

---

reservation. To the extent the forum selection clause (and relatedly, the Maryland choice-of-law clause) does apply to his breach of contract claim by virtue of his bald invocation of the Program Rules, his failure to identify the specific obligation breached renders that claim implausible and thus dismissed. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010) (explaining that to state a breach of contract claim, a plaintiff "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by [the] defendant" (citation modified)). His other claims make no such invocation of the Program Rules and thus pose no obstacle to the conclusion that they are unrelated to the Loyalty Program and Program Rules. Accordingly, even if the court were to dismiss the breach of contract claim for failure to state a claim rather than *forum non conveniens*, the remaining claims would still be dismissed on *forum non conveniens* grounds.

and Wales for purposes of adjudicating the claims asserted in this action," and identifies Manchester County Court as the court in England where Plaintiff can bring suit. (ECF No. 85, at 6–7). Accordingly, England is an available forum.

Turning to the adequacy of the alternative forum, the moving party must show that "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the same benefits as they might receive in an American court." *Galustian*, 591 F.3d at 731 (quoting *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F.App'x 84, 90 (4th Cir. 2007)). The first element is met because Defendant has already consented to suit in England, and Plaintiff lives in England.

The second element is met, too. Plaintiff does not contend that he will be treated unfairly in England, nor is there any reason to believe he would be treated unfairly in England. He also does not contest Defendant's assertion that England's Equality Act 2010 provides a cause of action for racial discrimination in hotels and restaurants. (ECF No. 60-1, at 20). Instead, he complains that he will be deprived of remedies on certain claims, namely his "Dodd-Frank whistleblower retaliation claim, [his] Sarbanes-Oxley certification claim, and [his] securities claim arising from CEO Capuano's stock sale." (ECF No.

64, at 5). Plaintiff did not assert these claims in his complaint, which he cannot amend through briefing or other filings. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Nor would he be permitted to amend his complaint to include them, because amendment would be futile. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). His Dodd-Frank claim under 15 U.S.C. § 78u-6(h), (ECF Nos. 31; 48), and his Sarbanes-Oxley claim under 18 U.S.C. § 1514A, (ECF Nos. 32; 48), are on their face available only to employees who blow the whistle on their employers. 15 U.S.C. § 78u-6(h)(1)(A) (providing that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower" in blowing the whistle); 18 U.S.C. § 1514A(a) (providing that certain publicly traded companies may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee" in blowing the whistle). And even if he could bring such claims, Plaintiff has provided no colorable, identifiable basis for them.

As for his securities claim, which he seems to locate under SEC Rule 10b-5, (ECF No. 32, at 1–2), Plaintiff has offered no indication that he purchased Defendant's securities, a fundamental prerequisite for suit. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–32 (1975) ("[T]he plaintiff class for purposes of § 10(b) and Rule 10b-5 private damage actions is limited to purchasers and sellers of securities." (collecting cases)). And it is not remotely plausible that the existence of his race discrimination complaint constitutes material, non-public information for a large multinational corporation like Marriott, to say nothing of the other onerous requirements that the Private Securities Litigation Reform Act imposes. Because it is implausible that Plaintiff could obtain relief for these claims even on an amended complaint here, his concern that he would not be able to obtain relief in England on those same claims poses no obstacle to dismissal.

England is an available and adequate alternative forum. The only remaining issue is the balance of private and public interests.

**C. Balance of Private and Public Interests**

After finding that there exists an adequate and available alternative forum for Plaintiff to bring his claims, the court must analyze the relevant private and public interests. In doing

so, "the defendant bears the burden of showing . . . that another forum is more appropriate." *Tang v. Synutra Intern., Inc.*, 09-cv-0088-DKC, 2010 WL 1375373, at *12 (D.Md. March 29, 2010) (citing *Kontoulas*, 745 F.2d at 315), *aff'd*, 656 F.3d 242 (4th Cir. 2011). Defendant has carried its burden here.

The Fourth Circuit has framed the factors to consider in the interest-balancing analysis as follows:

> (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies.

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009). In addition, the plaintiff's choice of forum is relevant. The weight of the private and public interests strongly favors Defendant.

Plaintiff's choice of forum commands little weight in this case. Plaintiff lives in England and is not a resident of Maryland. His choice of forum, then, is not entitled to a "heightened level of deference." *Bez v. Marriott Int'l, Inc.*, No. 24-cv-2827-DKC, 2025 WL 1928035, at *7 (D.Md. July 14, 2025). It is true, as Plaintiff appears to argue, (ECF No. 64, at 5), that when the

defendant is a resident of the forum, as Defendant is here, (ECF No. 1 ¶ 6), "[t]his lack of deference is muted." *Bez*, 2025 WL 1928035, at *7 (quoting *Galustian*, 591 F.3d at 732). Even so, "this factor is not necessarily significant," particularly when the plaintiff is a "citizen[] of another country" and his "alleged injuries all took place outside the United States." *Id.* at *7–8. Here, Plaintiff lives in England and all his injuries occurred there. Accordingly, Plaintiff's choice of forum and Defendant's place of residence do not weigh against dismissal.

Turning to the private interest factors, Defendant argues that all relevant witnesses and documentary evidence are in England, where the alleged incident occurred, and beyond the compulsory process of this court. (ECF No. 60-1, at 20–21 (citing Fed.R.Civ.P. 45(c))). Also relevant is the fact that the franchise operator of the hotel is a separate entity organized under United Kingdom law. (*Id.* at 21). Consequently, Defendant might be limited in its ability to procure information from the franchise operator absent compulsory process. Certain documentary evidence might need to be obtained "through letters rogatory or other international process," which would be "burdensome." (*Id.*). It would be far easier and less costly to litigate this case in England, where Plaintiff and the witnesses live and Defendant has agreed to appear. Plaintiff has little to say in response to these

points, other than to argue that the witnesses to his Dodd-Frank, Sarbanes-Oxley, and securities claims are in the United States. (ECF No. 64, at 5). As previously explained, however, those claims were not alleged in the complaint and are futile regardless. The private interest factors tilt decidedly in Defendant's favor.

The public interest factors likewise counsel dismissal. Some of the possible administrative difficulties of trying the case in this forum were detailed above. Furthermore, the "local interest in having localized controversies decided at home" means that England has the stronger interest in adjudicating this controversy. *Compania Naviera Joanna*, 569 F.3d at 200. As Defendant recounts, "[t]he alleged incident occurred at a Manchester hotel, involved Manchester employees, and affected individuals who were in England at the time." (ECF No. 60-1, at 22). On the other hand, "[n]o Maryland resident was involved, no conduct occurred in Maryland, and no Maryland business relationship is implicated." (*Id.*). Finally, English law likely applies to most if not all of Plaintiff's claims because he suffered the alleged injury in England and the federal statutes he invokes likely do not apply extraterritorially in this context. *See Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620 (2007) (explaining that Maryland applies the principle of *lex loci delicti*, the law of the place of injury, to torts like Plaintiff's

IIED claim); *Jones v. Lockheed Martin Corp.*, No. 25-cv-2875-PX, 2026 WL 2235369, at *3 (D.Md. Aug. 4, 2026) ("[T]he Court comfortably concludes—like every other court to have reached the issue—that § 1981 does not apply extraterritorially." (collecting cases)); 42 U.S.C. § 2000a(c) (explaining that its protections reach places of public accommodation that affect commerce but not including transactions occurring entirely in a foreign country within the definition of commerce); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 262–63 (2010) (noting that "even statutes that contain broad language in their definitions of commerce that expressly refer to *foreign* commerce do not apply abroad" (citation modified)).

Thus, this court is not at home with much of the applicable substantive law. "The *forum non conveniens* doctrine exists largely to avoid such comparative law problems." *Jiali Tang*, 656 F.3d at 252 (citing *Piper Aircraft*, 454 U.S. at 251; *Galustian*, 591 F.3d at 732). These public interest factors reinforce the conclusion that this dispute belongs in England.

To recap, England is an available and adequate alternative forum, and the balance of the private and public interest factors favor Defendant. The case will be dismissed on *forum non conveniens* grounds.

## IV. Plaintiff's Pending Motions

Dismissal of Plaintiff's complaint moots his motion for preservation order and anti-spoliation relief, (ECF No. 34), motion for corporate governance relief, (ECF No. 39), and motion for order directing Marriott's audit committee to commission independent investigation, (ECF No. 40). To the extent his motion for Rule 37 sanctions for failure to provide spoliation certification, (ECF No. 52), is not mooted by dismissal of the complaint, the motion is baseless. It faults Defendant for not certifying within forty-eight hours of service that it has preserved information relevant to this litigation. Plaintiff cannot unilaterally set deadlines for Defendant and then seek to sanction Defendant for failing to comply with them. All four pending motions will be denied.

## V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted and Plaintiff's four pending motions will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge